IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Carnie Norris, III, ) | Case No. 8:12-cv-01162-MGL-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Dr. Moore; Dr. Lewis; NPA Amy Enloe; ) | |
| Comm. Kaye Humphries, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on cross motions for summary judgment filed by Plaintiff [Doc. 30] and Defendants [Doc. 36]. Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on April 26, 2012 against Defendants Dr. Moore ("Moore"), Dr. Lewis ("Lewis"), NPA Amy Enloe ("Enloe"), and Comm. Kaye Humphries ("Humphries"; collectively, "Defendants").[1] [Doc. 1.] Plaintiff filed a motion for summary judgment on October 9, 2012. [Doc. 30.] On October 17, 2012, Defendants filed their motion for summary judgment [Doc. 36; *see also* Doc. 43 (executed affidavit of Moore)], and on October 26, 2012, Defendants filed a response in opposition to Plaintiff's motion, adopting

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on April 26, 2012. [Doc. 1 at 7 (Complaint signed by Plaintiff on April 26, 2012); Doc. 1-1 at 4 (affidavit signed by Plaintiff on April 26, 2012).]

the arguments, affidavits, and records filed with Defendant's own motion as their response [Doc. 54]. Plaintiff filed responses to Defendants' motion on October 25, 2012 and November 27, 2012. [Docs. 50, 67.] Defendants filed a reply to Plaintiff's responses on December 4, 2012. [Doc. 74.] Accordingly, the motions are now ripe for review.

## BACKGROUND

Plaintiff is an inmate of the South Carolina Department of Corrections ("SCDC") and at all times relevant to this action was housed at Perry Correctional Institution ("Perry"). [Doc. 1 at 2.] Plaintiff alleges his medical records establish he has a serious medical need—"bone spurs, severe pain, swelling and daily discomfort in both feet [that] is progressing to be unbearable"—that needs attention and/or treatment. [*Id.* at 4.] Plaintiff alleges that despite his diagnosis of and well-documented bone spurs, Enloe and Moore denied Plaintiff an orthopedic appointment, surgery, inserts, and shoes/sneakers, and Plaintiff was told to take Motrin. [*Id.* at 5.] Plaintiff further alleges he complained to Enloe, Lewis, Humphries, and HCA Harper[2] on several occasions. [*Id.*] Additionally, Plaintiff alleges Lewis examined him and told him (1) Moore decided Plaintiff's bone spur treatment based on financial reasons and (2) Humphries would provide "crocks" to alleviate Plaintiff's pain and discomfort. [*Id.*] Plaintiff alleges Humphries refused to provide Plaintiff with crocks despite being advised by medical to issue Plaintiff a pair of crocks. [*Id.* at 6.] Plaintiff alleges "[t]he denial, delay and interference with the prescribed treatment deprived [him] of the ability to exercise and get recreation. Serious bone spurs ha[ve] caused [P]laintiff a great deal of pain, suffering, swelling and discomfort." [*Id.*]

---

[2]The Court notes HCA Harper is not a named Defendant in this action.

2

Plaintiff seeks compensatory and punitive damages. [*Id.* at 7.] Plaintiff also seeks injunctive relief, including (1) an "order requiring SCDC officials/medical staff to give [him] proper medical care in the future" and (2) an order requiring "Defendants to provide surgery to remove bone spurs, proper rehab, to include insoles, orthopedic shoes/sneakers, boots and any and all prescribed treatment available to correct Plaintiff's serious bone spurs medical needs/aftercare." [*Id.*] Finally, Plaintiff seeks "[l]egal intern" fees. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by

> governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION[3]

### Deliberate Indifference

Plaintiff contends Defendants were deliberately indifferent to his serious medical needs by denying or delaying access to treatment and interfering with treatment. [Docs.

---

[3]Although not raised by Defendants, the Court notes Plaintiff's claims against Defendants in their official capacities must be dismissed. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

1, 30, 50, 67.] Defendants argue Plaintiff has failed to establish his claim because he has failed to show he had a serious medical need and that Defendants exhibited deliberate indifference to that need. [Doc. 36-1 at 4–8.] The Court agrees with Defendants.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-

6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Assuming without deciding that Plaintiff's alleged injury is a sufficiently serious medical condition,[4] Plaintiff has failed to establish he is entitled to summary judgment or

---

[4] "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

9

that a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind. First, Plaintiff acknowledges in the Complaint that Defendants did not ignore Plaintiff's injury. [*See, e.g.*, Doc. 1 at 5–6 (alleging Plaintiff received some treatment but not all treatment ordered by medical or requested by Plaintiff); Docs. 1-3, 1-4 (requests to staff and grievances revealing Plaintiff received treatment but expressing dissatisfaction with treatment received and that he needed additional treatment); *see also* Doc. 30 at 10 (acknowledging that he was regularly examined by medical staff).] Plaintiff merely complains he was not provided additional treatment. As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice. *See, e.g.*, *Jackson*, 846 F.2d at 817.

Second, evidence produced by Defendants precludes finding Defendants consciously disregarded a known substantial risk to Plaintiff's health or safety. Plaintiff's medical records show that, at Perry, Plaintiff first complained of foot problems on June 11, 2010, when he requested an orthopedic appointment due to flat feet. [Doc. 36-2 at 13.] Lewis noted there would be no orthopedic appointment for flat feet, but he would send a request for insoles with arch support. [*Id.*] The consult for insoles was disapproved. [*Id.*]

On November 18, 2010, Plaintiff returned to medical with complaints of right heel pain for the previous two months. [*Id.* at 10.] Plaintiff was instructed to avoid long periods of walking and standing and to take Tylenol or ibuprofen for pain. [*Id.* at 11.] Plaintiff returned to medical on November 30, 2010 still complaining of right heel pain and was

scheduled for x-rays and issued insoles.[5]  [*Id.* at 10.]  The x-rays were taken on December 3, 2010, and on December 8, 2010, Enloe made the following entry in Plaintiff's medical record: "Right heel with plantar spurring noted."  [*Id.*]  On January 28, 2011, a consult for insoles from the KCI specialty clinic was disapproved.  [*Id.*]

Plaintiff returned to medical for a follow-up sick call on February 17, 2011 and was told to continue Tylenol or ibuprofen from his dorm for his heel pain.  [*Id.*]  Plaintiff was evaluated for his painful right heel on March 2, 2011, and a consult for the podiatry clinic was faxed.  [*Id.*]  Moore disapproved the podiatry consult on March 8, 2011.  [*Id.*]  Moore averred he denied the podiatry consult because he determined that, in his professional opinion, a podiatry consult was not medically necessary to treat Plaintiff's minimal heel spurring.  [Doc. 43 ¶¶ 2–3.]  Moore also averred Plaintiff had the option of arranging an elective appointment with a podiatrist at his own expense.  [*Id.* ¶ 4.]

Plaintiff did not return to medical with complaints of foot pain until December 19, 2011.  [Doc. 36-2 at 6.]  On that day, he was scheduled to see Enloe and advised to use Motrin from the dorms as needed for his painful feet.  [*Id.*]  On December 20, 2011, Plaintiff was evaluated by Enloe, who faxed a consult for a prosthetic device, which was denied. [*Id.*]  As with the podiatry consult, Moore averred he denied the request for a prosthetic device because, in his professional opinion, it was not medically necessary.  [Doc. 43 ¶¶ 2–3.]

---

[5]The Court is unsure whether Plaintiff was given insoles and a change in footwear or just a change in footwear, which affected a change in his insoles.  [*See* Doc. 36-2 at 10 (noting on November 30, 2010 that Plaintiff was wearing boots and noting on March 2, 2011, after he was issued insoles, that Plaintiff was wearing Converse); *see also id.* at 6 (noting "Currently wearing boots.  No relief with Converse as well").]

Plaintiff was next evaluated by Lewis on January 19, 2012 for complaints of pain on the bottom of both heels. [Doc. 36-2 at 5.] Lewis informed Plaintiff that a new shoe brand was coming soon, showed Plaintiff stretching exercises, and recommended inserts if Plaintiff could get them. [*Id.*] Lewis noted Plaintiff's current tennis shoes were in "OK" shape and that Plaintiff declined prescription pain medication. [*Id.*] On March 13, 2012, Plaintiff inquired at sick call about foam rubber shoes and was told that the shoes were "due out from commissary as they arrive." [*Id.* at 4.] Thus, Defendants' evidence shows that, when he complained of these ailments, Defendants provided Plaintiff treatment for his heel spurs and foot pain.[6] [*See also* Docs. 36-3, 36-5 (affidavits of Lewis and Enloe).]

Plaintiff has attempted to contradict Defendants' evidence by producing letters from and articles provided by James Lewis, a licensed physical therapist and clinical assistant professor at Georgia State University. [Doc. 67-1 at 7–21.] However, assuming without deciding such evidence is admissible for purposes of summary judgment, Plaintiff's evidence fails to demonstrate Defendants were deliberately indifferent to Plaintiff's medical needs. At most, Plaintiff's evidence goes to whether his heel spur was a serious medical condition [*see, e.g.*, *id.* at 8 ("[H]eel pain commonly caused by heel spurs and/or plantar fasciitis can become a debilitating condition secondary to limiting normal weight bear status.")], but the evidence does not inform whether Defendants had the requisite state of

---

[6]Defendants contend summary judgment should be granted as to Humphries because, contrary to Plaintiff's contentions, Humphries never received a prescription or order to give crocs to Plaintiff—and there is no evidence that medical personnel prescribed crocs for Plaintiff—and therefore, Plaintiff has failed to present a case against Humphries. [Doc. 36 at 8; *see also* Doc. 36-4 (affidavit of Humphries).] The Court agrees that, to the extent Plaintiff claims Humphries was deliberately indifferent to Plaintiff's medical needs by failing to fill a prescription for crocs, there is no evidence that Plaintiff was prescribed crocs. Rather, Plaintiff was advised that SCDC was changing its standard issue shoe to crocs, which may help Plaintiff's foot pain, and Plaintiff would receive a pair when they arrived in the commissary. [*See, e.g.*, Doc. 1-3 at 6, 8; Doc. 1-4 at 4; Doc. 36-2 at 4, 5.]

mind to be liable for deliberate indifference. A claim of deliberate indifference to serious medical needs requires a greater showing than made here, even assuming Plaintiff's medical needs were serious and that a finding of negligence on the part of Defendants could be supported by the evidence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding the Due Process Clause is not implicated by a negligent act by a prison official that causes an unintended loss of or injury to life, liberty, or property); *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, Plaintiff has failed to demonstrate he is entitled to judgment as a matter of law or that a genuine issue of material fact remains as to whether Defendants were deliberately indifferent to his medical needs.

**Supervisory Liability**

To the extent Plaintiff has alleged a claim against Moore under a theory of supervisory liability [*see, e.g.*, Doc. 30 at 8–9, 12–13; Doc. 67-4 at 7], such claim should be denied. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to

> that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[7]

*Id.* (citations omitted).

Here, Plaintiff has failed to demonstrate sufficient facts to establish any of the three necessary parts of a supervisory liability claim. First, Plaintiff failed to show Moore had actual or constructive knowledge of a pervasive risk of harm to Plaintiff's rights. As discussed above, Plaintiff has failed to establish that his constitutional rights were violated; therefore, there was no pervasive risk of harm of which Moore should have been aware. Second, Plaintiff failed to show Moore acted with deliberate indifference with respect to Plaintiff's medical needs. Also as discussed, Plaintiff's medical needs were addressed by medical personnel, and, although Plaintiff may disagree with the treatment he received, Defendants were not deliberately indifferent to his medical needs. Finally, Plaintiff failed

---

[7]Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 693 (2009) (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions. *See Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

to establish a causal link between any inaction on the part of Moore and the alleged violation of Plaintiff's constitutional rights because Plaintiff failed to demonstrate Moore's subordinates were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has failed to state a claim under a theory of supervisory liability.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Plaintiff's motion for summary judgment [Doc. 30] be DENIED and Defendants' motion for summary judgment [Doc. 36] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

March 18, 2013
Greenville, South Carolina